UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RACHEL RONDEAU,                      :
          Plaintiff,                 :
                                     :
     v.                              :      CA 05-482 ML
                                     :
MICHAEL J. ASTRUE,[1]                :
COMMISSIONER OF SOCIAL SECURITY,     :
          Defendant.                 :


**REPORT AND RECOMMENDATION**

     This matter is before the Court on a request for judicial
review of the decision of the Commissioner of Social Security
("the Commissioner"), denying Disability Insurance Benefits
("DIB"), under § 205(g) of the Social Security Act, as amended,
42 U.S.C. § 405(g) ("the Act").  Rachel Rondeau ("Plaintiff"),
has filed a motion to reverse and/or remand.  Defendant Michael
J. Astrue ("Defendant") has filed a motion for an order affirming
the decision of the Commissioner.

     This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's decision that Plaintiff was not disabled is
supported by substantial evidence in the record.  Accordingly,
based on the following analysis, I recommend that Defendant's

---

[1] Pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1),
Commissioner Astrue is hereby substituted for Jo Anne B. Barnhart as
Defendant in this action.  See Fed. R. Civ. P. 25(d)(1) ("When a
public officer is a party to an action in his official capacity and
during its pendency dies, resigns, or otherwise ceases to hold office,
the action does not abate and the officer's successor is automatically
substituted as a party.  Proceedings following the substitution shall
be in the name of the substituted party ...."); see also 42 U.S.C. §
405(g)("Any action instituted in accordance with this subsection shall
survive notwithstanding any change in the person occupying the office
of Commissioner of Social Security or any vacancy in such office.").

Motion for Order Affirming the Decision of the Commissioner (Document ("Doc.") #11) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Doc. #8) ("Motion to Remand") be denied.

## Background

Plaintiff was born in 1974.  (Record ("R.") at 22)  She has a high school general equivalency degree and has been certified as a Emergency Medical Technician ("EMT").[2]  (R. at 22, 27)  In the relevant past Plaintiff worked as a veterinary assistant, customer service representative, and photo lab assistant, but did not engage in substantial gainful activity during the alleged period of disability.  (R. at 22)  When she testified on May 18, 2004, before the Administrative Law Judge ("ALJ"), (R. at 617), Plaintiff was working and supporting herself on her wages, (R. at 22).  During the time period at issue she lived alone at her father's house.  (Id.)

## Procedural History

Plaintiff filed an application for DIB on March 19, 2002, alleging disability for the closed period from December 26, 2001, through July 7, 2003,[3] as a result of bipolar disorder.  (R. at 22, 88)  The application was denied initially, (R. at at 31), and on reconsideration, (R. at 32), and on January 2, 2003, Plaintiff filed a request for a hearing before an ALJ, (R. at 41).

ALJ Barry H. Best conducted three separate hearings on March 4, May 18, and November 30, 2004.  (R. at 21, 552, 617, 699)  At

---

[2] Plaintiff received her EMT certification after the closed period of alleged disability, and it is, therefore, not considered part of the analysis of this matter.

[3] July 7, 2003, reflects the end date as amended by Plaintiff's counsel during Plaintiff's first administrative hearing.  (R. at 22, 560)

the first hearing, Plaintiff's counsel appeared, made an opening statement, (R. at 559-64), and cross-examined Stuart Gitlow, M.D., who testified as a medical expert ("ME"), (R. at 564-615). Testimony was taken from the ME and Plaintiff, as well as direct examination of Kenneth R. Smith as vocational expert ("VE") at the May 18, 2004, hearing.  (R. at 622-98)  At the final hearing on November 30, 2004, Plaintiff's counsel was given the opportunity to cross-examine the VE.  (R. at 705-38)

On February 23, 2005, ALJ Best issued a decision in which he found that Plaintiff was not disabled.  (R. at 21-30)  Plaintiff requested that the Appeals Council review this decision, (R. at 16-17), and that request was denied on September 23, 2005, (R. at 11), thereby rendering the ALJ's decision the final decision of the Commissioner, (id.).

A Complaint (Doc. #1) was filed in this Court on November 18, 2005.  Defendant on January 19, 2006, filed his Answer (Doc. #2).  On May 8, 2006, the Motion to Remand (Doc. #8) was filed, followed on July 7, 2006, by the Motion to Affirm (Doc. #11). Plaintiff's Response to Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Plaintiff's Reply Brief") (Doc. #12) was filed on July 24, 2006, and Defendant's Sur-Reply to Plaintiff's Response to Defendant's Memorandum of Law in Support of Her Motion for an Order Affirming the Decision of the Commissioner ("Defendant's Sur-Reply") (Doc. #13) was filed on August 3, 2006.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act, as amended, during the period from December 26, 2001, through July 7, 2003, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[4] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(quoting Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)))(second alteration in original). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d at 222 (citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

## Law

To qualify for DIB, a claimant must meet certain insured

---

[4] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

status requirements,[5] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[6]  20 C.F.R. § 404.1521(a) (2007).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step

---

[5] Plaintiff met the insured status requirements as of December 26, 2001, the alleged onset of her disability, and continued to meet them through the date of the ALJ's decision.  (R. at 22, 28)

[6] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2007).  Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Commissioner must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether she has a severe impairment; (3) whether
her impairment meets or equals one of the Commissioner's listed
impairments; (4) whether the claimant is able to perform her past
relevant work; and (5) whether the claimant remains capable of
performing any work within the economy.  See 20 C.F.R. §
404.1520(b)-(g).  The evaluation may be terminated at any step.
See Seavey, 276 F.3d at 4.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met his or her burden at the first four steps,
the Commissioner then has the burden at Step 5 of coming forward
with evidence of specific jobs in the national economy that the
applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606,
608 (1st Cir. 2001).

   In 1996, Congress amended the Act "to preclude a finding of
disability 'if alcoholism or drug addiction would (but for this
subparagraph) be a contributing factor material to the
Commissioner's determination that the individual is disabled.'"
Brown v. Apfel, 71 F.Supp.2d 28, 35 (D.R.I. 1999)(quoting
Contract for America Advancement Act, Pub. L. No. 104-121 §
105(a)(1), 105(b)(1), 110 Stat. 847, 852-853 (codified as amended
at 42 U.S.C. § 423(d)(2)(C) (1996))), aff'd, 230 F.3d 1347 (1st
Cir. 2000).

      Thus, under the Act as amended, if a finding of
      disability is made after the five step analysis, the
      Commissioner must go one step further and make this
      materiality determination.  The "key factor" to be
      considered, in fact the only factor mentioned in the

regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism.

Brown, 71 F.Supp.2d at 35; see also 20 C.F.R. § 404.1535(b)(1)(2007).[7]  "A claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability." Lonsberry v. Barnhart, No. 01-245-P-H, 2002 WL 449695, at *3 (D. Me. Mar. 25, 2002)(citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999)).

### ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case found: that Plaintiff did not engage in substantial gainful activity during the period from December 26, 2001,

---

[7] Section 404.1535 provides:

(a) General.  If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (2007).

7

through July 7, 2003, (R. at 22, 28); that the medical evidence established that Plaintiff had severe bipolar disorder, but that it did not meet or equal a listed impairment, (R. at 23, 28); that during the alleged period of disability the degree of incapacity claimed by Plaintiff as resulting from her impairments was not consistent with the record as a whole, (R. at 23, 29); that during the period of December 26, 2001 through July 7, 2003, Plaintiff had the residual functional capacity to perform the nonexertional requirements of work except for a moderate restriction in the ability to maintain concentration and attention, (R. at 27, 29); that Plaintiff could not perform her past relevant work as a claims clerk, photo lab worker, dry cleaner worker, or car dealership service receptionist, (id.), but that there were a significant number of jobs existing in the national economy which she could have performed during the alleged disability period, (R. at 28, 29); and, therefore, that Plaintiff was not under a disability, as defined by the Act, at any time during the period from December 26, 2001 through July 7, 2003, or at any time through the date of the decision, (id.).

## Errors Claimed

Plaintiff alleges that the ALJ: 1) failed to apply the treating physician rule appropriately, see Memorandum in Support of Plaintiff's Motion to Reverse without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision ("Plaintiff's Mem.") at 9 (citing 20 C.F.R. § 404.1527(d)(2)); 2) failed to discharge his affirmative duty to re-contact Plaintiff's treating physicians, id. at 11; 3) failed to mention or evaluate the opinion of the Disability Determination Services ("DDS") expert, Clifford Gordon, Ed.D., id. at 12; 4) failed to follow the proper method for evaluating substance abuse, id. at 13; and 5) inaccurately evaluated Dr. Adrian Webb's expert medical opinion, id. at 16.

8

**Discussion**

I.  **The AlJ properly applied the treating physician rule.**

The ALJ gave little or no weight to the opinions of
Plaintiff's treating physicians, Keri Lemmond, M.D., and Achina
Stein, D.O.[8]  (R. at 24-25)  He fully explained his reasons for
this determination.   The ALJ found that their contemporaneously
recorded treatment notes were far more probative than statements
prepared or produced by Plaintiff's counsel months after their
treatment of Plaintiff had ceased.   (R. at 25)

Specifically, with regard to Dr. Keri Lemmond, the ALJ
observed that her May 6, 2004, statement had been created and
signed more than a year and half after she had last seen
Plaintiff.   (<u>Id.</u>)   In a footnote, the ALJ noted that the
statement had been "prepared by counsel with selected reference
to Dr. Lemmond's treatment notes ...," (R. at 25 n.5), and that
it "cannot substitute for the actual, unedited, and unvarnished
statements contained in Dr. Lemmond's contemporaneously recorded
treatment notes, which as relevant, are set forth in detail in
this decision," (<u>id.</u>).   The ALJ explained that the ME had been
questioned about the statement by Plaintiff's counsel and that
the ME had responded that the statement "as far as it went, was
accurate, but that it was not complete and not reflective of the
entire medical record."[9]   (R. at 25)   The ALJ also recounted the

---

[8] These opinions are most prominently expressed in Dr. Lemmond's
May 6, 2004, written statement, (R. at 544-45), and in Dr. Stein's May
17, 2004, recorded telephone conversation with Plaintiff's counsel
which was transcribed and submitted in a redacted and edited form, (R.
at 546-51).

[9] This description of the ME's testimony is accurate.  He
testified that:

> I have issue with [Dr. Lemmond's statement] because it means
> that the information here, although it was taken from the
> medical record, and is virtually verbatim in certain areas and
> obviously is a clear paraphrase in others is all correct, all

ME's observation that Dr. Lemmond's statement had been "written *for* but not *by* her."[10]   (R. at 25)

Similarly, in the case of Dr. Stein, the ALJ found that her contemporaneously recorded, unredacted, and unedited treatment notes were of far greater value in determining Plaintiff's capabilities and limitations than "a document *produced by counsel* well over a year after the close of the period at issue ...." (Id.).  He supported this finding by describing the ME's assessment of the statement from Dr. Stein:

> Dr. Gitlow [the ME] assessed that the responses attributed to Dr. Stein in the "redacted" and "edited" report were reasonable, but focused on symptoms causing the claimant problems, and did not address occasions or areas of improvement also elucidated in the contemporaneously recorded progress notes.   Dr. Gitlow also observed in particular that the last paragraphs of Dr. Stein's statement, and the conclusions drawn, were supported *only* by notes from very early in the claimant's treatment, and did *not* reflect conclusions that would be appropriately drawn from the claimant's entire course of treatment.

(R. at 25)

Notwithstanding these facts, Plaintiff contends that the ALJ committed error by giving no weight to the opinions of Dr. Lemmond and Dr. Stein.   See Plaintiff's Mem. at 9.  In support of

---

reflective of what was in the medical record **but is not reflective of the entire medical record**.

(R. at 627)(bold added).

[10] On this point, the ME testified:

My issue with Dr. [Lemmond's statement (R. at 544-45)] is that the statement is not one that was written by Dr. [Lemmond] but one that was written for her and which she signed.

(R. at 627)

this claim, Plaintiff cites 20 C.F.R. § 1527(d)(2) which provides
in part:

> If we find that a treating source's opinion on the
> issue(s) of the nature and severity of your impairment(s)
> is well-supported by medically acceptable clinical and
> laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in your case record,
> we will give it controlling weight. When we do not give
> the treating source's opinion controlling weight, we
> apply the factors listed in paragraphs (d)(2)(i) and
> (d)(2)(ii) of this section, as well as the factors in
> paragraphs (d)(3) through (d)(6) of this section in
> determining the weight to give to the opinion.

20 C.F.R. § 404.1527(d)(2) (2007).

Plaintiff contends that the error is particularly egregious
in this case because "Drs. Lemmond and Stein are no mere primary
care physicians, but specialists opining within their particular
field of expertise." Plaintiff's Mem. at 9-10. As support for
this contention, Plaintiff notes that pursuant to 20 C.F.R. §
404.1527(d)(5), the Commissioner "generally give[s] more weight
to the opinion of a specialist about medical issues related to
his or her area of specialty than to the opinion of a source who
is not a specialist." Id. at 10. Plaintiff claims that the
opinions of Drs. Lemmond and Stein are "not inconsistent with the
other substantial evidence," id., and that "they are entirely in
keeping with the sound, well-reasoned opinions of Drs. Gordon[11]
and Dr. Webb,[12]" id. Lastly, Plaintiff asserts that "[t]o favor

---

[11] Clifford Gordon, Ed.D., is a DDS expert who opined on December
12, 2002, that Plaintiff's substance abuse was at that point so
intertwined with her other mental impairments that the effects of the
limitations stemming from her substance abuse could not be separated
from her mental illness. (R. at 435)

[12] Adrian Webb, M.D., performed a consultative evaluation of
Plaintiff on February 26, 2004, some eight months after the end of the
alleged period of disability, at the request of Plaintiff's counsel.
(R. at 522)

11

the opinion of one non-examining, reviewing doctor over the
lengthy opinions of two treating and one examining specialist is
clear legal error."  Id.

     The Court rejects Plaintiff's assertion that it is error per
se for an ALJ to afford greater weight to the opinion of an ME
than to a plaintiff's treating physicians.  See Arroyo v. Sec'y
of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)("[T]he
law in this circuit does not require ALJs to give greater weight
to the opinions of treating physicians."); see also Keating v.
Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir.
1988); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127,
130 (1st Cir. 1981).  An ALJ is also not required to accept the
opinion of claimant's treating physicians on the ultimate issue
of disability.  See Arroyo, 932 F.2d at 89.  Social Security
Regulations provide that an ALJ will give controlling weight to
the opinion of a treating source as to the nature and severity of
an impairment when such opinion is found to be (1) well-supported
by medically acceptable clinical and laboratory diagnostic
techniques and (2) not inconsistent with the other substantial
evidence in the case record.  See 20 C.F.R. § 404.1527(d)(2).

     Here the ALJ found that Dr. Lemmond and Dr. Stein's opinions
were inconsistent with the record viewed as a whole, including
their own contemporaneously recorded treatment notes, and the
testimony of the ME.  (R. at 24-26)  The ALJ's decision contains
a detailed, multi-paged review of Dr. Lemmond's and Dr. Stein's
treatment notes, evidencing inconsistencies and/or contradictions
between these notes and their later statements.  (R. at 22-24)
Referring to Dr. Lemmond's records, the ALJ wrote the following:

     At [Plaintiff's] May 6, 2002, appointment, she reported
     some fatigue and a lack of ambition, but she was sleeping
     and eating well, had no mood swings, and was able to live
     alone at her father's house.  Her Seroquel was reduced
     due to some medication side effects.  On mental status
     evaluation, she was cooperative and adequately groomed,

12

with goal directed speech, a full range of affect, and no
signs of psychosis.  Dr. Lemmond noted that her general
behavior had improved, with no pressured speech, and no
evidence of affective lability.  There was no change in
her status on May 31, 2002, although Dr. Lemmond changed
her medication to Topamax due to some hair loss and
weight gain.  Ms. Rondeau responded quite favorably to
this adjustment in her medication, reporting less
depression and more energy and motivation.  There was no
pressure of speech or racing thoughts, and despite some
low self-esteem, she felt her future was looking better.
She also indicated she had a good visit with her family,
and Dr. Lemmond's assessment was that the claimant was
'doing very well' with no bipolar symptoms, no psychosis,
and only mild anxiety.  The claimant stated she was not
using any drugs.  At her July [2002] appointment, the
claimant indicated she was eating healthier, exercising,
working on her property, and remained awake throughout
the day.  She denied mood swings, irritability or
psychosis, slept throughout the night, and was described
as "almost baseline."   Dr. Lemmond again noted
improvement in the claimant's general behavior, thoughts
and affect.  The claimant noted a slight increase in
depression in August 2002, but was described as future-
oriented, and insisting she wanted to apply for
unemployment rather than disability.  It was also noted
that she wanted to work.  She was sleeping and eating
well.

(R. at 22-23)  The ALJ's description of Dr. Lemmond's treatment

notes is supported by the record.  (R. at 403-18, 478-81)

The ALJ also recounted extensively Dr. Stein's medical

notes:

In November, 2002, [Plaintiff] came under the care of Dr.
Stein, and in December, reported that she had broken up
with her boyfriend and felt positive about changes she
was making in her life.  Despite some continued
depression, she expressed improvement which continued
into January, 2003.  At that time, Dr. Stein urged the
claimant to consult with Amy Pine, the vocational
rehabilitation counselor.  In February, 2003, she
reported she was doing cleaning and small projects at
home, and was anxious to get out and meet people.  Dr.
Stein assessed overall improvement but with some anxiety
and a lack of confidence.  In April, 2003, Dr. Stein
noted she enjoyed varied activities including reading,

13

> bike riding and going dancing.  She had good family support[] and had fairly good insight and judgment regarding her household needs.  The claimant was working with vocational rehabilitation and was in the process of going back to school.  As of May, 2003, the claimant reported having a few depressive episodes related to the anniversary of the death of her brother, but was compliant with medication, was receiving support from friends, anticipated starting EMT school soon, and had only mild residual depressive symptoms.

(R. at 23)  The above recitation is supported by the record.  (R. at 482-88, 504-21)

Moreover, the ALJ's judgment regarding the inconsistency and contradiction between the treatment notes and the opinions of Drs. Lemmond and Stein was informed by the testimony of the ME who had reviewed those records.  Addressing Dr. Lemmond's May 6, 2004, statement, the ME testified on May 18, 2004:

> In this case, let me make it specific, this statement has some information about the May 31, 2002[,] note ... it summarized it as being the patient was less groggy with a decreased dosage of Seroquel but she still complained of decreased energy and motivation.  She was losing her hair and complaining of weight gain, so they opted to change to an alternative mood stabilizer.  They discontinued Depakote and started the patient on Topamax.  Well, there was other information in that note.  Other information said mood was okay.  There's no voices.  There's no grandiosity.  There's occasional depression and what depression there is, is mild in nature.  So, on the one hand, the information that was in that medical note[] makes it seem that she's doing quite well and, on the other hand, with just this information, it sounds as if she has some significant symptoms so I would say that this statement is accurate but I don't believe it reflects the gist of each one of the progress notes.

(R. at 627-28)

The ME also testified at the March 4, 2004, hearing that:

> The problem that I have is that these, the supplemental questionnaire and the emotional impairment questionnaire results [completed by Dr. Lemmond] are significantly different from Dr. L[emmond's] own monthly notes at

[Northern Rhode Island Community Mental Health Center] during that same time period. So that makes my determination somewhat difficult since I'm going on information from the same doctor with both sets of information. Dr. L[emmond's] own monthly notes appear to indicate mild intensity of symptoms at best during the period after about February of '02. So I have difficulty showing that the Claimant has significant functional impairment at any time during the requested time period.

(R. at 571-72)

The record also contains the following colloquy between the ME and Plaintiff's counsel regarding Dr. Stein's transcribed statement:

Q   So, to the extent that [Dr. Stein] has done a mini-RFC in that statement, you disagree with the current treating psychiatrist[13] as well?

A   She's making those statements based, in part, on her own examination of the Claimant during that time and, in part, based upon the previous physician's treating record. She is also making that statement, that is more or less directly contradicted by portions of the medical record. We look, for instance, at the April 2, 2003[,] note, which would be included in the period of time that Dr. Stein refers to. That note indicates that the Claimant is in a new relationship, is very happy, but does have some anxiety when out socially. That's not moderately severe, not in my book, for social functioning, the fact that she was able to develop a new relationship.

Q   Well, but it doesn't give you information about what her social anxiety was, correct?

A   It says she's anxious when out socially. An individual, more anxious, wouldn't be out socially. So it does allow me some degree of ability to determine the extent to which the symptoms are severe.

(R. at 641)

---

[13] Plaintiff's attorney identified "the current treating psychiatrist," (R. at 641), as being Dr. Stein, (R. at 640).

15

In his decision, the ALJ noted that the ME was questioned extensively regarding the medical evidence, including the statements referenced above.[14]   (R. at 25)

> Challenged by counsel regarding his ability to reach
> conclusions different from those of physicians who have
> treated the claimant, Dr. Gitlow indicated that he based
> his opinions on his review of the entire record, noting
> that not all treating physicians have the benefit of the
> full record.  He noted that psychiatrists are trained to
> assess functional limitations of a patient on a number of
> factors, that some psychiatrists are better than others
> in doing so, and acknowledged that good doctors can and
> do disagree.

(R. at 25)  Thus, Plaintiff's attorney cross-examined the ME in detail about his disagreement with Dr. Lemmond's and Dr. Stein's statements.[15]   The ME's responses were well reasoned and supported by the record.

The case of <u>Morales Colón v. Commissioner of Social Security</u>, 245 F.Supp.2d 395 (D.P.R. 2003), which Plaintiff cites in support of her argument, <u>see</u> Plaintiff's Mem. at 10, is distinguishable.  There the court concluded that "the ALJ failed to comply with the treating physician rule by failing to grant proper weight to evidence from the claimant's treating physicians."  <u>Morales Colón</u>, 245 F.Supp.2d at 399.  The court reached this conclusion because the medical opinions of "Doctors

---

[14] It bears noting that the record of the hearings before the ALJ is almost 200 pages in length (R. at 552-741), the longest which this Magistrate Judge can recall encountering in a Social Security case. The examination of the ME comprises more than eighty pages of that record.  (R. at 564-615, 624-52, 684-86)

[15] In footnote 10 of the decision, the ALJ notes that "[c]ounsel, at both the initial and subsequent hearing, conducted quite lengthy, and sometimes tedious and repetitive, examination and cross-examination both of the medical expert and, later, of the vocational expert.  At the second hearing ... the bulk of the questioning consisted of additional long cross-examination of the medical expert by counsel ...."  (R. at 27 n.10)

Vera-Miró and Jiménez-Colón ... [were] supported by medical exams conducted by both physicians, accompanied by extensive clinical and laboratory evidence." Id.  Significantly, the court also noted that "the record is completely **devoid of any evidence** which contradicts said medical opinions, or otherwise suggests that the claimant has fully recuperated and/or has an excellent bill of health." Id. (bold added).  The same is not true in the instant case.  As explained above, here there are substantial inconsistencies between Plaintiff's physicians' treatment notes and their more recent statements.

The conflict between the opinion of Plaintiff's treating physicians and that of the ME was for the Commissioner to resolve.  See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); see also Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 141 (1st Cir. 1987) ("Conflicts in the evidence, are assuredly, for the [Commissioner]-rather than the courts-to resolve.").  The testimony of a non-examining medical advisor can alone constitute substantial evidence, depending on the circumstances.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Rodriguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989)(finding that testimony of non-examining medical advisor constituted substantial evidence to support the Secretary's finding that Plaintiff could perform a full range of sedentary work); cf. Lewis v. Barnhart, No. 04-62-B-W, 2004 WL 2677211, at *5 (D. Me. Nov. 24, 2004)("[T]he administrative law judge committed no error in choosing to credit the RFC assessment of a non-examining consultant ... over that of an examining consultant ....").

In sum, the ALJ's reliance on the ME's testimony and opinion rather than on the opinions of Plaintiff's treating physicians was not legal error where the latter's opinions were not well

17

supported and were inconsistent with their treatment notes.  The testimony of the ME constitutes substantial evidence which supports the ALJ's decision in this regard.

## II.  The ALJ was not required to re-contact Plaintiff's treating physicians.

Plaintiff asserts that the ALJ failed to discharge his affirmative duty to re-contact Plaintiff's treating physicians. See Plaintiff's Mem. at 11.  She contends that "[i]f the ALJ did not believe that the evidence supported the vocational limitations assessed by [the] treating psychiatrists, and could not ascertain the basis of said conclusions, relevant regulations place an affirmative duty upon him to recontact the doctors to explain their opinions."  Id. (citing 20 C.F.R. § 404.1512(e)(1)).  The regulation which Plaintiff cites states:

> (e) Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source **is inadequate for us to determine whether you are disabled**, we will need additional infomation to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e) (2007) (bold added).

The evidence in this case was voluminous, a fact amply demonstrated by the 741 page record.  The medical records were reviewed and evaluated by the ME, and he was subjected to lengthy

cross-examination regarding those records.  The ME repeatedly explained why he disagreed with the opinions of the treating physicians.  The ME testified that the factual statements contained in those opinions were accurate, but that they did not reflect the entire record.  Given the detailed and extensive record, the ALJ had ample evidence to determine whether Plaintiff was disabled.  There is no indication that he was uncertain about the basis for the treating physicians' opinions.

Plaintiff would apparently have the Court read the regulation as requiring that the ALJ must recontact the treating physician in every case where the ALJ declines to accept the treating physician's opinion.  The Court rejects such contention. The ALJ was not required to recontact the treating physicians.

**III.  The ALJ's failure to mention Dr. Gordon's report is harmless error.**

Plaintiff asserts that the ALJ's failure to mention in his decision the opinion of Clifford Gordon, Ed.D. ("Dr. Gordon"), a state agency expert who reviewed Plaintiff's medical records, is "clear legal error requiring that the matter ... be remanded ...."  Plaintiff's Mem. at 13.  In support of this contention, Plaintiff cites Social Security Ruling (SSR) 96-6p which in relevant part provides:

> 1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
>
> 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996)(S.S.A.).

Dr. Gordon completed a Psychiatric Review Technique Form

("PRTF"), Mental Residual Functional Capacity ("RFC") form, and
DDS Case Review Form on December 12, 2002.  (R. at 419-37)   In
the PRTF, Dr. Gordon found that Plaintiff met the requirements
for Listing 12.04 (Affective Disorders) due to bipolar disorder,
Listing 12.06 (Anxiety-Related Disorders) because of her post-
traumatic stress disorder ("PTSD"), and Listing 12.09 (Substance
Addiction Disorders) based on her bipolar and PTSD.  (R. at 419,
422, 424, 427)  He also concluded that Plaintiff had moderate and
marked limitations in several categories based on these
impairments.  (R. at 433-44)  However, Dr. Gordon additionally
noted that:

> [C]laimant has had ongoing substance abuse, with short
> periods of substance abuse being 'in remission.'
> Limitations thus are quite difficult to separate
> with/without 12.09, and one is unable to do this at this
> time.  **Thus, limitations presented are with 12.09 being
> present.**

(R. at 435)(bold added).

It is clear from this statement that in assessing
Plaintiff's capabilities Dr. Gordon included the effects of her
substance abuse.  Therefore, his report is not evidence that
Plaintiff was disabled in the absence of such substance abuse,
and the ALJ found that there was no evidence that subsequent to
March 1, 2002, Plaintiff abused any drugs or alcohol.[16]  (R. at
27 n.7)  Thus, for sixteen of the eighteen months at issue, the
condition which was an essential part of Dr. Gordon's evaluation
was absent.  This circumstance greatly diminishes any probative

---

[16] The ALJ's finding that there was no evidence of substance abuse
by Plaintiff during this period almost matches the statement of
Plaintiff's counsel at the hearing that Plaintiff "has been abstinent
from drugs and alcohol since -- prior to February 3, '02," (R. at
561).  Thus, the ALJ's finding that substance abuse was not relevant
to the disability determination was in accord with the position taken
by Plaintiff at the hearing.

weight his evaluation might otherwise have.

The ALJ additionally found that "there is no evidence that the claimant's substance abuse met the 12 month durational requirement or would otherwise be material to the determination of disability." (Id.)  This finding was consistent with Dr. Gordon's finding that Plaintiff's impairments were of a severity less than listings lasting twelve months.  (R. at 437)  Thus, even if the ALJ had discussed Dr. Gordon's report in his decision, it would not have changed the outcome of Plaintiff's case since the ALJ concluded that substance abuse was immaterial to the determination of disability and Plaintiff's substance abuse impairment did not meet the durational requirement.  To remand this case in order for the ALJ to so state would be a gratuitous exercise.

While the ALJ should have mentioned Dr. Gordon's report, see SSR 96-6p, 1996 WL 374180, at *1, the Court finds that his failure to do so was harmless error.  The ALJ implicitly gave Dr. Gordon's report little or no weight.  In addition, the ALJ's oversight must viewed be in context.  He was required to review over four hundred pages of medical records, (R. at 150-551), many of which are handwritten and not easily read.  He conducted three hearings which together consumed nearly five hours, and he wrote a lengthy, detailed decision in which he supported his findings with citations to the record.

In summary, the Court finds that the ALJ's failure to specifically discuss the report of a state agency consultant who found that Plaintiff met the requirements of Listings 12.04 (bipolar disorder) and 12.06 (PTSD), as well as Listing 12.09 (substance abuse addiction), was harmless error where substantial evidence supports the ALJ's finding that substance abuse was immaterial to the determination of disability and the state agency consultant found that the impairments did not meet the

21

durational requirement.  Accordingly, the Court rejects this claim of error.

**IV.  The ALJ's treatment of Plaintiff's substance abuse was not error.**

Plaintiff contends that the ALJ failed to follow the proper method for evaluating substance abuse.  See Plaintiff's Mem. at 13.  Specifically, Plaintiff complains that the ALJ did not first decide whether she was disabled considering both her mental illness and her history of substance abuse.  See id. at 15-16. She cites 20 C.F.R. § 404.1535 (2005) in support of this claim of error.  See id. at 14.

Section 404.1535 requires that if a claimant is found to be disabled and there is medical evidence of drug addiction or alcoholism, then a determination must be made whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.  See 20 C.F.R. § 404.1535(a).  Here, the ALJ did not find Plaintiff to be disabled, so he was not required to determine whether she would be disabled if she stopped using drugs or alcohol.  See Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003)("The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled.")(citing 20 C.F.R. § 404.1535(a)); Williams v. Barnhart, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004)(concluding that the regulations implementing 42 U.S.C. § 423(d)(2)[17] "clearly require that the sequential evaluation process be followed in adjudicating disability before any consideration is given to whether drug addiction is the cause of such disability")(citing 20 C.F.R. §§ 404.1535(a),

---

[17] 42 U.S.C. § 423(d)(2)(C) states: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).

416.935(a)); see also Bruggemann, 348 F.3d at 695 ("Only after
the ALJ has made an initial determination 1) that [the claimant]
is disabled, 2) that drug or alcohol use is a concern, and 3)
that substantial evidence on the record shows what limitations
would remain in the absence of alcoholism or drug addiction, may
he then reach a conclusion on whether [the claimant's] substance
use disorders are a contributing factor material to the
determination of disability.").

The Court is constrained to observe that this particular
claim of error is more than a little ironic.  Plaintiff's counsel
told the ALJ that Plaintiff had been abstinent from drugs and
alcohol since to prior to February 3, 2002.  (R. at 561)  Thus,
Plaintiff represented that she had not used any drugs or alcohol
for almost seventeen months of the eighteen month period at
issue.  Throughout the hearings before the ALJ, Plaintiff's
position was that her past drug and alcohol abuse were not
material to her claim of disability.  The ALJ in fact found this
to be the case.  (R. at 27 n.7)  Yet, she now contends that he
failed to follow the proper method for evaluating substance
abuse.  Even if the ALJ had not properly assessed Plaintiff's
substance abuse, the Court would not be inclined to remand on
this ground given that Plaintiff had, in effect, represented that
substance abuse was not an issue in the case.  (R. at 561)

**V.  The ALJ's decision to afford no weight to Dr. Webb's medical
opinion is supported by substantial evidence.**

Lastly, Plaintiff contends that the ALJ's decision to give
no weight to the opinion of Adrian Webb, M.D., is not supported
by substantial evidence.  See Plaintiff's Mem. at 18.  The Court
disagrees.  The ALJ provided a full explanation of why he
rejected Dr. Webb's opinion:

> A psychiatric examination conducted by Dr. Adrian Webb at
> the arrangement of the attorney on February 26, 2004,

23

nearly 8 months *after the close of the requested period of disability* is accorded no probative value.  This examination, procured solely for the purpose of furthering the claimant's application for disability benefits, took place well after the close of the relevant period, and conclusions reached by the examiner were necessarily based on the claimant's subjective recollections of how she felt more than 2 years prior to the examination.  Certain statements contained in the report are clearly inconsistent with the contemporaneously recorded records.  Dr. Webb further reports a number of restrictions on the claimant's functioning within a particular time frame, but apparently did not have any of the contemporaneously recorded treatment notes for the period(s) addressed.

(R. at 24-25)(internal footnote omitted).

Each of the reasons stated above is supported by the record and, with one possible exception,[18] constitutes a valid basis for discounting Dr. Webb's opinion.  The degree to which a doctor's opinion is supported by contemporary records and is not inconsistent with those records is also a valid basis for determining the weight to be given to that opinion.  See Coggon v. Barnhart, 354 F.Supp.2d 40, 56 (D. Mass. 2005)("The hearing officer reasonably gave [the doctor's] opinions less weight due to the lack of 'supportability,' 20 C.F.R. § 404.1527(d)(3), and lack of 'consistency[,]' 20 C.F.R. § 404.1527(d)(4)[.]").  Here, the ALJ identified the statements in Dr. Webb's report which were inconsistent with the contemporaneously recorded records.  (R. at 25 n.4)  Specifically, the ALJ noted that Dr. Webb concluded that

_____

[18] While the Court of Appeals for the First Circuit has indicated that an ALJ may not discredit medical reports solely on the basis that they were obtained after the claim for benefits was filed and on advice and referral of counsel, see Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987), "an administrative law judge's decision can still pass muster if the other reasons given to accord medical reports little weight are adequately supported," Arroyo v. Barnhart, 295 F.Supp.2d 214, 221 (D. Mass. 2003)(citing Gonzalez Perez, 812 F.2d at 749).  Here the other reasons are amply supported.

24

Plaintiff had not used or abused substances since late 2001 and based on this finding determined that substance use was non-contributory to her decompensation in December of 2001.  (Id.) However, the ALJ observed that the records from that period "lead unavoidably to a contrary conclusion."  (Id. (citing R. at 150-359))

In addition to the foregoing reasons, the ALJ cited the fact that the ME disagreed with Dr. Webb's residual functional assessment.  (R. at 25)  The ALJ pointed out that the ME found Dr. Webb's conclusions to be "inconsistent with the medical records, including notes of Dr. Webb's own treatment[19] of the claimant."  (Id.)  With regard to Dr. Webb's assessment of "marked" limitations, the ALJ wrote that this "was clearly inconsistent with ... not only his notes but the entire medical record for the period under adjudication."  (R. at 26)

In short, the ALJ evaluated Dr. Webb's report in accordance with the factors set forth in 20 C.F.R. § 404.1527(d).  It was the ALJ's responsibility to resolve conflicts in the evidence. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  Substantial evidence supports his decision to accord no weight to Dr. Webb's opinion.

### Summary

For the reasons stated above, I find that the ALJ's evaluation of the opinions of Plaintiff's treating and examining physicians was proper and supported by substantial evidence.  He was not required to recontact the treating physicians as the

---

[19] Although the ALJ wrote "treatment," it is apparent that he was referring to Dr. Webb's one-time examination of Plaintiff on February 26, 2004.  (R. at 522-27)  Plaintiff's suggestion that the word "treatment" indicates that ALJ may have misunderstood the ME's testimony or Dr. Webb's status as an examining physician, see Plaintiff's Mem. at 17-18, does not merit further discussion.

medical record was adequate to permit him to make his determination.  I further find the ALJ's failure to mention the report from DDS consultant Dr. Gordon to be harmless error. Lastly, the ALJ accurately considered Plaintiff's history of substance abuse and correctly concluded that it was immaterial to the disability determination.

### Conclusion

The Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and that any legal error is harmless.  Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Remand be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
November 28, 2007